Mark SABLE, etc., Libelant,

v.

AMERIND SHIPPING CORPORATION
et al., Respondents.

No. 2616.

United States District Court
S. D. Alabama, S. D.

Sept. 16, 1959.

R. B. Wilkins and Sam R. Stephenson of Cunningham & Wilkins, Mobile, Ala., for libelant.

John H. Tappan of Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for respondents.

DANIEL HOLCOMBE THOMAS, District Judge.

This is a suit for cargo damage to two shipments of steel bars.

Some 58 lifts of structural grade debars, which are described as steel reinforcing bars for concrete and steel construction, were shipped aboard the Steamship Heelsum, one of the respondents here, in Antwerp, and carried to Mobile. The Heelsum issued a bill of lading without exceptions at Antwerp. They were discharged at Mobile at the Alabama State Docks Department on October 5, 1956, and certain exceptions were noted. There is no evidence of the extent of damage indicated by the exception on discharge.

The libelant had become the owner of these debars by purchase of the bill of lading, and his agent in Mobile, by letter on November 1, 1956, had instructed the State Docks to place the cargo in storage for the account of the libelant. The record does not disclose when the libelant actually physically obtained these particular debars, but it does show that the State Docks billed the agent of the libelant for storage, wharfage, and handling in transfer to storage, for a period from October 18, 1956 to January 17, 1957. (Also there was testimony from a Mobile scrap dealer who examined some cargo of the Steamship Heelsum at the State Docks in May or June of 1958. He said it had value only as junk.)

An Alabama State Docks check sheet dated December 15, 1956, referring to this cargo, discloses a movement of the cargo from one location to another on the State Docks, and contains an exception. A second check sheet of the State Docks, dated March 16, 1957, also referring to this cargo, shows another movement of

the cargo but does not contain any exceptions.

A letter dated July 19, 1957, with an invoice attached, sent to the respondents, was the first claim made arising out of the foregoing. The invoice is the libelant's own and it discloses a price of $8,-466.71 for the debars; a scrap value of $50 a ton, or a total of $2,742.90, leaving a balance of $5,723.81, plus storage charges of $106.30, being the amount claimed. It is not shown if the cargo was available for the respondents' examination, or if the respondents were requested to, or did examine the cargo.

Based on these facts, on December 3, 1957, libelant filed this action. Respondent, in answering, attached the bill of lading under which the cargo was carried, which discloses a one year limitation from the time of delivery within which suit must be filed, and thirty days within which written particulars of a claim shall be presented. The bill of lading includes other matters which the respondent has raised in defense.

The foregoing constitutes the substance of the facts presented in this case with regard to the cargo carried by the Heelsum.

Joined with the cause of action involving the Heelsum cargo, was a second cause of action concerned with some 38 lifts of debars carried aboard the Steamship Witmarsum. Respondent has made no objection to this joinder.

The Witmarsum discharged her cargo at Mobile on December 4, 1956. There had been no exceptions given by the Witmarsum on the bill of lading issued by it, but certain exceptions were noted on discharge. Again the State Docks billed libelant for this cargo, for wharfage, handling and transfer and storage, the storage being from December 15, 1956, to May 30, 1957, as to one portion, and to June 14, 1957, as to another portion. (There was testimony to the effect that the State Docks, as a general practice or custom, permits cargo to remain on the docks for a period of ten days without charge for storage. I under-

stand that is the reason the storage charges on the Heelsum cargo did not start until October 18, 1956; and the storage charges on the Witmarsum cargo did not start until December 15, 1956.)

The libelant picked up the Witmarsum cargo in two lots, one in May and the second in June of 1957. He made claim as to damage to this cargo on June 22, 1957, in the total amount of $542.36. His claim states it was only worth $70 a ton as scrap value. Again it is not shown that the respondent had opportunity to see this cargo or that respondents did see it. There is actually no showing as to damage touching the cargo of the Witmarsum. The only information available with regard to damage is the libelant's own claim, which was admitted into evidence for the purpose of showing the first date on which claim was made. Mr. Zieman the scrap dealer who testified, had no knowledge with regard to any cargo of the Witmarsum.

In this state of the case, it does not seem to me that the libelant has carried his burden. I think it may be quite possible that the bars that came off the Heelsum were bent. I have no way of knowing if they were then in the condition as claimed by the libelant in July of the following year.

It is my opinion that there had been a delivery of the cargo, either when the cargo was discharged from the vessel or at the end of the so-called free time on the wharf (it is not necessary for these purposes to decide which). See Galveston Wharf Co. v. Galveston, Harrisburg & San Antonio Ry. Co., 285 U.S. 127, 52 S.Ct. 342, 76 L.Ed. 659; Miami Structural Iron Corp. v. Cie Nationale, etc., 5 Cir., 224 F.2d 566. The delivery was to the Alabama State Docks on behalf of the libelant, and thereafter remained with the State Docks for many months. There is no showing when the damage which is claimed actually occurred. The bill of lading in Article One provides that respondent shall not be responsible for damage to the goods after discharge from the vessel.

**658**

Further with regard to the cargo of the Heelsum, more than a year elapsed from the time of delivery of the cargo until suit was filed. The one year limitation clause in the bill of lading has application. As to the Witmarsum, there is no showing that there was damage such as would prevent the bars from being used for their intended purpose.

In view of these conclusions, it is unnecessary to give consideration to the other defenses raised by the respondent. Let the libel be dismissed.